**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ION MEDIA NETWORKS, INC., *et al.*, | Case No. 09-13125 (JMP) |
| Debtors. | Jointly Administered |
| ION MEDIA NETWORKS, INC. | |
| Plaintiff, | |
| v. | Adv. Proc. No. |
| CYRUS SELECT OPPORTUNITIES MASTER FUND, LTD., | |
| Defendant. | |

**DEBTORS' ADVERSARY**
**COMPLAINT FOR DECLARATORY RELIEF**

ION Media Networks, Inc. ("*ION*") and its debtor affiliates (collectively, the "*Debtors*"),[1] as debtors and debtors-in-possession in the above-captioned chapter 11 cases, and

---

[1] The Debtors in these chapter 11 cases are: ION Media Networks, Inc.; America 51, L.P.; ION Media Akron License, Inc.; ION Media Albany License, Inc.; ION Media Atlanta License, Inc.; ION Media Battle Creek License, Inc.; ION Media Boston License, Inc.; ION Media Brunswick License, Inc.; ION Media Buffalo License, Inc.; ION Media Charleston License, Inc.; ION Media Chicago License, Inc.; ION Media Dallas License, Inc.; ION Media Denver License, Inc.; ION Media Des Moines License, Inc.; ION Media Entertainment, Inc.; ION Media Greensboro License, Inc.; ION Media Greenville License, Inc.; ION Media Hartford License, Inc.; ION Media Hawaii License, Inc.; ION Media Hits, Inc.; ION Media Holdings, Inc.; ION Media Houston License, Inc.; ION Media Indianapolis License, Inc.; ION Media Jacksonville License, Inc.; ION Media Kansas City License, Inc.; ION Media Knoxville License, Inc.; ION Media Lexington License, Inc.; ION Media License Company, LLC; ION Media Los Angeles License, Inc.; ION Media LPTV, Inc.; ION Media Management Company.; ION Media Martinsburg License, Inc.; ION Media Memphis License, Inc.; ION Media Milwaukee License, Inc.; ION Media Minneapolis License, Inc.; ION Media New Orleans License, Inc.; ION Media of Akron, Inc.; ION Media of Albany, Inc.; ION Media of Atlanta, Inc.; ION Media of Battle Creek, Inc.; ION Media of Birmingham, Inc.; ION Media of Boston, Inc.; ION Media of Brunswick, Inc.; ION Media of Buffalo, Inc.; ION Media of Cedar Rapids, Inc.; ION Media of Charleston, Inc.; ION Media of Chicago, Inc.; ION Media of Dallas, Inc.; ION Media of Denver, Inc.; ION Media of Des Moines, Inc.; ION Media of Detroit, Inc.; ION Media of Fayetteville, Inc.; ION Media of Greensboro, Inc.; ION Media of Greenville, Inc.; ION Media of Hartford, Inc.; ION Media of Honolulu, Inc.; ION Media of Houston, Inc.; ION Media of Indianapolis, Inc.; ION Media of Jacksonville, Inc.; ION Media of Kansas City, Inc.; ION Media of

as plaintiffs in the above-captioned adversary proceeding, hereby allege for their Complaint as follows:

## SUMMARY OF CLAIMS

1. ION brings this action to obtain a declaration of its rights under the Pledge and Security Agreement (the "*Security Agreement*")[2] that it entered into in connection with its issuance of first and second priority debt. Specifically, the Security Agreement and the Collateral Agent and Secured Party Acknowledgments annexed thereto (the "*Intercreditor Agreement*"),[3] explicitly state that the liens granted to, and claims of, the holders of first priority debt (the "*First Priority Secured Parties*") in respect of the Collateral (as defined in the Security Agreement) are senior to those of the holders of second priority debt (the "*Second Priority Secured Parties*"). Further, the Intercreditor Agreement prohibits the Second Priority Secured Parties from contesting the priority or validity of the liens held by the First Priority Secured Parties or the First Priority Secured Parties' interest in the Collateral, and from objecting to a

---

Knoxville, Inc.; ION Media of Lexington, Inc.; ION Media of Los Angeles, Inc.; ION Media of Louisville, Inc.; ION Media of Martinsburg, Inc.; ION Media of Memphis, Inc.; ION Media of Miami, Inc.; ION Media of Milwaukee, Inc.; ION Media of Minneapolis, Inc.; ION Media of Nashville, Inc.; ION Media of New Orleans, Inc.; ION Media of New York, Inc.; ION Media of Norfolk, Inc.; ION Media of Oklahoma City, Inc.; ION Media of Orlando, Inc.; ION Media of Philadelphia, Inc.; ION Media of Phoenix, Inc.; ION Media of Portland, Inc.; ION Media of Providence, Inc.; ION Media of Raleigh, Inc.; ION Media of Roanoke, Inc.; ION Media of Sacramento, Inc.; ION Media of Salt Lake City, Inc.; ION Media of San Antonio, Inc.; ION Media of San Jose, Inc.; ION Media of Scranton, Inc.; ION Media of Seattle, Inc.; ION Media of Spokane, Inc.; ION Media of Syracuse, Inc.; ION Media of Tampa, Inc.; ION Media of Tulsa, Inc.; ION Media of Washington, Inc.; ION Media of Wausau, Inc.; ION Media of West Palm Beach, Inc.; ION Media Oklahoma City License, Inc.; ION Media Orlando License, Inc.; ION Media Philadelphia License, Inc.; ION Media Portland License, Inc.; ION Media Publishing, Inc.; ION Media Raleigh License, Inc.; ION Media Sacramento License, Inc.; ION Media Salt Lake City License, Inc.; ION Media San Antonio License, Inc.; ION Media San Jose License, Inc.; ION Media Scranton License, Inc.; ION Media Songs, Inc.; ION Media Spokane License, Inc.; ION Media Syracuse License, Inc.; ION Media Television, Inc.; ION Media Tulsa License, Inc.; ION Media Washington License, Inc.; ION Media Wausau License, Inc.; ION Media West Palm Beach Holdings, Inc.; ION Media West Palm Beach License, Inc.; ION Television Net, Inc.; Ocean State Television, L.L.C.; and Open Mobile Ventures Corporation.

[2]    A true and correct copy of the Security Agreement is attached hereto as Exhibit A.

[3]    A true and correct copy of the Intercreditor Agreement is attached hereto as exhibit B.

2

plan or disclosure statement that is consistent with the First Priority Secured Parties' rights under the Security Agreement.

2.  Defendant Cyrus Select Opportunities Master Fund Ltd. ("*Cyrus*") -- a Second Priority Secured Party -- has already challenged the validity of certain liens held by the First Priority Secured Parties in certain Collateral, and the priority of the First Priority Secured Parties' claims to that Collateral. Cyrus has also made clear that it intends to further pursue this challenge throughout the plan confirmation process. But the Second Priority Secured Parties, including Cyrus, bargained away their right to assert such challenges in the Security Agreement and Intercreditor Agreement. In fact, one of the precise purposes of the Intercreditor Agreement is to prevent Second Priority Secured Parties like Cyrus from hijacking the Debtors' restructuring efforts, by forcing the Debtors to expend significant costs and resources litigating challenges to the bargained-for rights set forth in the Security Agreement.

3.  Accordingly, ION respectfully requests a judgment under 28 U.S.C. § 2201 declaring that Cyrus is prohibited from (a) contesting the validity or enforceability of any lien, mortgage, assignment or security interest granted on all of the Debtors' property to the First Priority Secured Parties, (b) contesting the priority rights granted to the First Priority Secured Parties under the Security Agreement, and (c) opposing or objecting to the Debtors' Plan of Reorganization and Disclosure Statement, which are consistent with the rights of the First Priority Secured Parties under the Security Agreement.

## JURISDICTION

4.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

5.  Venue of this proceeding is proper under 28 U.S.C. § 1409.

## PARTIES

6. ION and each of its Debtor affiliates are plaintiffs in this proceeding. ION owns and operates the largest broadcast television station group in the United States, providing network programming that consists of popular television series, movies, specials and sports. ION and each of the Debtors are Grantors under the Security Agreement, which includes, as "Annex I," the Intercreditor Agreement.

7. Upon information and belief, Defendant Cyrus Select Opportunities Master Fund Ltd. is a holder of Second Priority Secured Obligations (*i.e.*, second priority debt) and is therefore a Second Priority Secured Party.

## STATEMENT OF FACTS

### The Security Agreement

8. On December 30, 2005, ION and each of its subsidiaries[4] entered into the Security Agreement and the Intercreditor Agreement as an integral part of a $1.03 billion financing transaction in which ION borrowed $725 million in first priority secured debt and $405 million in second priority secured debt.

9. The Security Agreement defines "Collateral" as all of ION's currently-owned or after-acquired property -- including FCC Licenses and proceeds derived from that property. (Ex. A at § 2.1.) In exchange for the loans, ION granted each of the First Priority Secured Parties and Second Priority Secured Parties a separate and distinct security interest in the Collateral, with the exception of certain "Excluded Property." (Ex. A at § 2.2.)

10. Excluded Property means "Special Property," except for "any proceeds, products, accessions, rents, profits, income, benefits, substitutions or replacements of any Special

---

[4] The Security Agreement was entered into by ION's predecessor, Paxson Communications Corporation. For convenience, Paxson Communications Corporation is referred to as ION in this Complaint.

4

Property." Special Property is defined as, among other things, "any permit, lease, license agreement or other personal property held by any Grantor to the extent that any Requirement of Law applicable thereto prohibits the creation of a security interest therein." (Ex. A at § 1.1.)

11.   Under applicable case law, the Security Agreement's grant of a security interest to both the First and Second Priority Secured Parties in the Debtors' FCC Licenses to the extent not prohibited by any requirement of law, and its express grant of a security interest in any FCC License Proceeds, means that the First and Second Priority Secured Parties hold a perfected security interest in the right to receive proceeds derived from the FCC Licenses, which is considered a general intangible.

12.   Under the Security Agreement, the security interests in Collateral granted to the First Priority Secured Parties, including the security interests in the FCC License proceeds and the right to receive such proceeds, are senior to the interests in the Collateral granted to the Second Priority Secured Parties. (Ex. A at § 2.3.) Additionally, proceeds derived from any Collateral cannot be paid to the Second Priority Secured Parties unless and until the First Priority Secured Parties have been paid in full. (Ex. A at § 8.)

**The Intercreditor Agreement**

13.   The key section of the Intercreditor Agreement is Section 11, which sets forth the rights and priorities of the First Priority Secured Parties and the Second Priority Secured Parties in the event a chapter 11 case is commenced.

14.   Section 11(a) of the Intercreditor Agreement provides that the "Security Agreement shall remain in full force and effect and enforceable pursuant to their respective terms in accordance with Section 510(a) of the Bankruptcy Code," (Ex. B at § 11), notwithstanding any commencement of a bankruptcy proceeding. This means, among other things, that the subordination of the Second Priority Secured Parties' liens provided for in Section 2.3 of the

Security Agreement remain valid and enforceable, notwithstanding these bankruptcy proceedings.

15. Section 11(b) of the Intercreditor Agreement goes on to prohibit the Second Priority Secured Parties from taking any action to contest "the validity, priority or enforceability of the Liens, mortgages, assignments and security interests granted pursuant to the Security documents with respect to the Secured Obligations," or "the relative rights and duties of the holders of the First Priority Secured Obligations and the Second Priority Secured Obligations granted and/or established in the Security Agreement with respect to such Liens, mortgages, assignments, and security interests." (Ex. B at 11(b).) Consequently, Cyrus cannot contest the validity or rights of the First Priority Secured Parties' liens on and security interests in any Collateral, including FCC License proceeds.

16. Finally, Section 11(c) of the Intercreditor Agreement provides that until the "First Priority Secured Obligations Termination Date" -- which means the first date and time upon which all First Priority Secured Obligations have been paid in full in cash or otherwise discharged or defeased in accordance with the terms of the First Priority Documents -- the Second Priority Secured Parties may not "oppose, object to or vote against any plan of reorganization or disclosure statement the terms of which are consistent with the rights of the First Priority Secured Parties under the Security Agreement." (Ex. B at § 11(c).) Thus, Cyrus cannot object to any plan or disclosure statement that is consistent with the rights of the First Priority Secured Parties and that provides for a distribution of Collateral to the First Priority Secured Parties, unless the First Priority Secured Parties are unimpaired under the plan or disclosure statement.

6

17. These provisions mean that the subordination of the Second Priority Secured Parties' liens remain valid, enforceable and unchallengeable, notwithstanding these bankruptcy proceedings. They also mean that the subordination of the Second Priority Secured Parties' claims provided for in the Intercreditor Agreement is valid, enforceable and unchallengeable. The Intercreditor Agreement is clear that the Second Priority Secured Parties' claims against the Grantors in respect of the Collateral are *junior* to the claims of the First Priority Secured Parties, regardless of whether the liens of the First Priority Secured Parties and Second Priority Secured Parties are perfected.

18. Specifically, Section 9(a) of the Intercreditor Agreement provides that "each of the Secured Parties acknowledges and agrees to the relative priorities as to the Collateral (and the application of the proceeds therefrom) as provided in the Security Agreement . . . and acknowledges and agrees that *such priorities (and the application of proceeds from the Collateral) shall not be affected or impaired in any manner whatsoever* including without limitation on account of" among other things:

> (a) "the invalidity, irregularity, diminution in value or unenforceability of all or part of any Secured Debt Document or any of the Secured Obligations thereunder;"
>
> (b) "any nonperfection of any Lien purportedly securing any of the Secured Obligations (including, without limitation, whether any such Lien is now perfected, hereafter ceases to be perfected, is avoidable by any bankruptcy trustee or otherwise is set aside, invalidated or lapses);" or
>
> (c) "the initiation of any bankruptcy, moratorium, reorganization or other insolvency proceeding with respect to any Grantor."

(Ex. B at § 9(a) (emphasis added).)

19. Further, Section 10(a) of the Intercreditor Agreement states that "the provisions of the Security Documents with respect to allocations, priorities and distributions of proceeds of the

Collateral shall prevail notwithstanding any event or circumstance including, without limitation, in the event that . . . any Secured Party's security interest in the Collateral is avoided in whole or in part . . . ." (Ex. B at § 10(a).)

20. And Section 14(i) of the Intercreditor Agreement provides that "the Second Priority Secured Parties' claims against the Grantors in respect of the Collateral constitute junior claims separate and apart . . . from the senior claims of the First Priority Secured Parties against the Grantors in respect of the Collateral." (Ex. B at § 14.)

**ION's Plan and Disclosure Statement**

21. Contemporaneously with the filing of this Complaint, ION filed its plan and disclosure statement. The plan contemplates the conversion of ION's $150 million DIP financing to 62.5 percent of Reorganized ION's equity and conversion of all outstanding first priority indebtedness (approximately $850 million) into the remaining 37.5 percent of Reorganized ION's equity. The proposed conversion is based upon the valuation of ION's business prepared by ION's financial advisor, Moelis & Company, and is included in the Disclosure Statement. Based upon this valuation analysis, the First Priority Secured Parties are receiving less than the full value of their claims. Accordingly, under the terms of the Security Agreement and the Intercreditor Agreement, and consistent with the Bankruptcy Code, the Second Priority Secured Parties may not recover any value.

22. Because this distribution scheme -- and thus the plan -- is consistent with the rights of the First Priority Secured Parties under the Security Agreement, and because the First Priority Secured Parties will not be paid in full in cash, or otherwise discharged or defeased in accordance with the terms of the First Priority Documents, the Intercreditor Agreement expressly prohibits the Second Priority Secured Parties from opposing or objecting to either the Plan or the Disclosure Statement. (Ex. B at § 11(c).)

8

**Cyrus's Objection**

23. Notwithstanding the clear prohibitions in the Intercreditor Agreement, Cyrus has indicated, by its prior conduct both in signed pleadings and in open court, that it intends to object to both the Plan and Disclosure Statement. In particular, Cyrus has indicated that its objection will contest both the validity of the First Priority Secured Parties' lien on the right to proceeds from the FCC Licenses and the priority of distribution of any proceeds therefrom.

24. In its supplemental objection to ION's motion seeking approval of DIP financing, Cyrus argued that the First Priority Secured Parties did not have a valid lien on the FCC Licenses -- or the right to proceeds -- and that Cyrus was therefore "entitled to share on a *pari passu* basis" in any value attributable to the FCC Licenses under a plan of reorganization. (Supplemental Objection of Cyrus dated June 30, 2009 [Docket No. 115] at 7.)

25. Cyrus's counsel also stated during the hearing on the DIP motion that "as unsecured creditors of these entities that own FCC licenses . . . we believe that in a plan of reorganization, as unsecured creditors, we have to share with the other unsecured creditors of those entities in that value." (Tr. at 24:14-18.) Later in the hearing, counsel for Cyrus again noted that Cyrus was objecting to the DIP, in part, to preserve its ability to argue "that we have an unfettered shot at realizing the value at the license subsidiaries, either in the context of a plan, or in the context of a different type of transaction, however these cases turn out." (Tr. at 124:18-23.)

26. Such an argument would violate Section 11 of the Intercreditor Agreement.

## COUNT I
### (Declaratory Judgment under 28 U.S.C. § 2201)

27. ION repeats and realleges paragraphs 1-25 as if fully set forth herein.

9

28. ION and its subsidiaries, in their capacity as Grantors under the Security Agreement, are the beneficiaries of certain provisions that were intended to establish definitively the priority rights of the First Priority Secured Parties and Second Priority Secured Parties with respect to the Collateral and, perhaps more importantly, ensure that any restructuring would not be delayed or frustrated by intercreditor disputes.

29. Thus, the Intercreditor Agreement includes provisions barring Second Priority Secured Parties from challenging the First Priority Secured Parties' liens on any of the Collateral including, most notably, the security interest in the in the right to receive proceeds of the FCC Licenses. The Intercreditor Agreement also prevents Cyrus from challenging the seniority of the First Priority Secured Parties' interests in any of the Collateral or claims against the Grantors in respect of Collateral. Finally, the agreement prohibits Cyrus from objecting to ION's Plan and Disclosure Statement, as they are consistent with the rights of the First Priority Secured Parties.

30. Cyrus has indicated that it intends to object to the Plan and Disclosure Statement. And its objection will challenge the validity of the First Priority Secured Parties' liens on and security interest in the right to proceeds of the FCC Licenses, as well as the subordination of the Second Priority Secured Parties' claims against the Grantors in respect of the Collateral.

31. Requiring the Debtors to litigate these impermissible objections in connection with the Plan process will not only potentially delay and frustrate ION's ability to restructure its business and emerge from bankruptcy expediently, but will clearly result in unnecessary costs to the estates. Absent the relief sought herein, ION cannot be adequately compensated for the damages it will incur if Cyrus proceeds with its objections to the plan and disclosure statement. Any damage would not be quantifiable.

32.     The Intercreditor Agreement, to which ION is a party, is clear on its face and enforceable against Cyrus. Enforcing the plain terms of the Intercreditor Agreement will ensure that the estate's resources are not wasted disputing issues that the parties have already established by contract and is the most certain, prompt, complete and efficient means of attaining the ends of justice and its prompt administration.

33.     Accordingly, a real and substantial controversy exists between parties with adverse legal interests and with sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## **PRAYER FOR RELIEF**

WHEREFORE, ION prays that the Court grant it relief as follows:

(d)      A judgment declaring that Cyrus Select Opportunities Master Fund Ltd. is prohibited from (1) contesting the validity or enforceability of any lien, mortgage, assignment, or security interest granted on Debtors' property, (2) contesting the relative rights and duties of the holders of the First Priority Secured Obligations and the Second Priority Secured Obligations granted under the Security Agreement, including the subordination of the Second Priority Secured Parties' claims against the Grantors in respect of the Collateral, and (3) opposing or objecting to ION's plan of reorganization or disclosure statement; and

(e)      All other relief as the Court deems just and proper.

New York, New York  
Dated: August 19, 2009

*s/ Jonathan S. Henes*
James H.M. Sprayregen, P.C.
Jonathan S. Henes
Joshua A. Sussberg
KIRKLAND & ELLIS LLP
Citigroup Center
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900

Attorneys for the Plaintiff and the Debtors and Debtors in Possession